UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | AFFIDAVIT IN SUPPORT OF APPLICATION FOR |
| -against- | SEARCH WARRANT |
| PREMISES KNOWN AND DESCRIBED AS xxxx xxXX STREET, N.W., Apartment xxx WASHINGTON, DC 20005 | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DISTRICT OF COLUMBIA, SS:

ROBERT K. SPROULL JR., being duly sworn, deposes and says that he is a Special Agent (SA) with the Federal Bureau of Investigation (FBI), duly appointed according to law and acting as such.

There is probable cause to believe that there are located at the PREMISES KNOWN AND DESCRIBED AS xxxx xxXX STREET, N.W., APARTMENT XXX, WASHINGTON, D.C. 20005, documents, computer hardware, computer software, computer documentation, passwords, data security devices, and related electronic storage devices used to collect, store, maintain, retrieve, conceal, transmit, and use electronic data in the form of electronic records, documents, and materials, including those used to facilitate communications, as described more fully in Attachment B, and papers, documents and writings all of which property constitutes evidence, instrumentalities or fruits of violations of Title 18 U.S.C. Section 875(c). (Interstate Communications of Threats to Injure).

The source of your affiant's information and the grounds for his belief are as follows:

1. I am a Special Agent with the FBI, and have been so employed for approximately seven

years. My current duties include the investigation of threats and other Federal criminal violations related to violent crime.

2. The facts set forth in this affidavit are based on information provided to me by other FBI Special Agents, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals, and information gained through my experience.

3. I make this affidavit in support of an application by the United States for the issuance of a warrant to search for and seize evidence of violations of Title 18, United States Code, Section 875(c) and instrumentalities of such violations.

4. There is probable cause to believe that violations of Title 18, United States Code, Section 875(c) has been committed at the PREMISES KNOWN AND DESCRIBED AS xxxx xxXX STREET, N.W., APARTMENT xxx WASHINGTON, D.C. 20005 (the premises), described more fully in Attachment A, which is attached hereto and incorporated herein by reference. The items to be seized from the premises include all computer hardware, computer software, and related computer devices, and documents and records.

5. As set forth in more detail below, there is probable cause to believe that violations of Title 18, United States Code, Section 875(c) have been committed at the premises and the premises maintains computers, electronic equipment, computer hardware, computer software, storage media, records, and other such evidence and instrumentalities of such violations.

6. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I learned during the course of this investigation.

**Summary of Relevant Concepts**

7. The **Internet** is a collection of computers and computer networks which are connected to

one another via high-speed data links and telephone lines for the purpose of sharing information. Connections between Internet computers exist across state and international borders and information sent between computers connected to the Internet may cross state and international borders, even if those computers are located in the same state.

8. A **server** is a centralized computer that provides services for other computers connected to it via a network or the Internet. The computers that use the server's services are sometimes called "**clients**." When a user accesses email, Internet web pages, or accesses files stored on the network itself, those files are pulled electronically from the server, where they are stored, and are sent to the client's computer via the network or Internet. Notably, server computers can be physically located in any location; for example, it is not uncommon for a network's server to be located hundreds (or even thousands) of miles away from the client computers. In larger networks, it is common for servers to be dedicated to a single task. For example, a server that is configured so that its sole task is to support a World Wide Web site is known simply as a "Web server." Similarly, a server that only stores and processes e-mail is known as a "mail server."

9. An **Internet Service Provider (ISP)** is a commercial service that provides Internet connections for its subscribers. In addition to providing access to the Internet via telephone or other telecommunications lines, ISPs may also provide Internet e-mail accounts and other services unique to each particular ISP.

10. Computers connected to the Internet are identified by addresses. Internet addresses are unique and can be resolved to identify a physical location and a specific computer connection. Internet addresses take on several forms, including **Internet Protocol (IP) addresses**, **Uniform Resource Locator (URL) addresses**, and **domain addresses**. A domain address is a unique name that identifies a computer within a network; for example, a domain address of

"mymachine@mydomain.com" defines a computer called "mymachine" within the "mydomain.com" Internet domain.

11. The **Internet Protocol address** (or **IP address**) is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned a unique IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.

12. **Log files** are computer files containing information regarding the activities of computer users, processes/programs running on the system and the activity of computer resources such as networks, modems, and printers. Log files can be used to identify activities that occurred on a specific computer.

13. **Modems** permit a connection to the Internet over the same lines used for telephone or cable service. The modem allows a user to physically dial into his ISP from any location with a telephone line or in the case of a cable modem, provides an "always on" connection through the subscribers cable service.

14. **Computer hardware** consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data processing device (such as central processing units (CPUs), memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as

modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

15.  **Computer Software** is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, optical, or other digital form, it commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

16. **Computer-related documentation** consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

17.  **Computer passwords and other data security devices** are designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist or hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

## Summary of Investigation

18.  On November 29, 2005 this investigation was initiated in the El Paso, Texas division of

the FBI after the editor of the El Paso Times newspaper received an e-mail that listed the sender as "Charles Henry Schoonover". The e-mail contained biographical information concerning FBI Assistant Director Candice Will and her family, specifically her husband who was identified by name and her child. The e-mail message stated that they were targeted for assassination.

19. The e-mail message further stated that Assistant Director Will and her family would be "violently killed" for "Candice's complicity in covering up the attempted murder of myself (Schoonover), Juan Garcia Abrego and Saddam Hussein, to name a few".

20. The sender of the e-mail message listed his name as "Charles Henry Schoonover" and his address as "xxxx xx$^{xx}$ Street, N.W, Apartment xxx, Washington, D.C. 20005" in the message. The sender also listed his telephone number, e-mail address and a web address.

21. At approximately 9:50 p.m. on November 29, 2005, FBI Special Agents interviewed Charles Henry Schoonover, a male born Xxxx xx, xxxx, at his residence located at xxxx xx$^{xx}$ Street, N.W., Apartment xxx, in the District of Columbia. During the interview, agents asked whether any other persons were on the premises and whether they could briefly inspect the residence to determine whether anyone was present, who could present a threat to their safety. Schoonover consented and agents briefly inspected the apartment to verify that no other persons were present. Agents observed three computers on the premises.

22. Agents advised Schoonover that there had been a threat made to a government official, without identifying the official or providing any details of the threat. In response Schoonover stated that he has sent e-mails to "editors". Schoonover declined to talk further with the agents.

### Instrumentalities and Evidence of the Crime

23. Computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct ways and important respects: (1) the objects

themselves may be instrumentalities, fruits, or evidence of a crime, and/or (2) the objects may have been used to collect and store information about crimes in the form of computer data.

24. Evidence in the form of computer software, files, and/or data will remain on a corresponding storage device or media unless overwritten or physically destroyed. For example, when a file is "erased," all or part of the file's contents typically remain until overwritten by that of a newly stored file. Furthermore, such evidence is not consumed, like evidence of drugs, or degraded with time, like blood or other biological evidence. In this manner, such evidence will remain, in part or in its entirety, for an extended period of time.

25. Based on you my knowledge, training, and experience, I know that searching computerized information for evidence or instrumentalities of a crime commonly requires agents to seize most or all of a computer system's input/output peripheral devices, storage media, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the peripheral devices which allow users to enter or retrieve data from the storage devices very widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system. It is important that the analyst be able to properly reconfigure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

26. In this case, there is probable cause to believe that the computers and electronic storage media inside of xxxx xx$^{xx}$ Street, N.W., Apartment xxx contain evidence of a threat made in violation

of 18 U.S.C. § 875(c).

27. Based on my training and experience and that of other FBI personnel with whom I have consulted, I know that individuals who participate in computer-based crimes often maintain records, notes, calendars, journals, instructions, photographs, and other material related to their activity, including such items as points of contacts, and physical and electronic messages.

28. I also know that a computer's browser -- utilized to view and transact with Internet sites -- is likely to keep a history of the locations the browser has logged onto in the past, and that this history of log information will often remain on the computer for months. It is reasonable to believe that the computer or computers located inside of xxxx xx$^{xx}$ Street, N.W., Apartment xxx will contain a history of the locations the browser has logged onto in the past, and a corresponding history of log information. Other evidence regarding the use of the computer to connect to the Internet also is likely to be stored on the computer. For example, e-mail programs commonly maintain a log of sent, received and deleted e-mail communications. Even if such information was manually deleted from the computer, forensic examination often can retrieve such information.

### Search of Computers and Computer Evidence

29. Based upon my knowledge, training, and experience, evidence seized from computers almost always requires agents to seize most or all of the electronic data media and storage devices to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is because a computer user can employ various methods of concealing such criminal evidence, to include storing data in random order or with deceptive file names. This requires searching authorities to examine all stored data to determine which particular files are included in the warrant. This sorting process can take weeks or months depending on the volume of data stored and is best accomplished in a laboratory or other controlled environment. It is impractical to attempt to retrieve this kind of

data on site.

30. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources and from destructive codes embedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

31. If any computers are seized, the FBI will conduct searches of the computers at FBI facilities for further evidence relating to criminal activity. Based upon my training and experience, I know that searches of computers often are facilitated by, and sometimes require, the seizure of computer peripherals, software, storage media, instructional manuals, and other items listed in Attachment B which are likely to be found at the same location as the computers. Accordingly, the FBI seeks authorization to seize the items listed in Attachment B which are found at the search location.

## Analysis of Electronic Data

32. The analysis of electronically stored data may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file directories and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); opening or reading the first few pages of such files in order to determine their precise contents; scanning storage areas

to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of this investigation.

### Conclusion

33. Based on the facts and circumstances summarized above in this affidavit, there is probable cause to believe that the computer hardware, software, documents, and records located at xxxx xx$^{xx}$ Street, N.W., Apartment xxx, Washington, D.C., contains evidence of a criminal offense, served as the means for criminal offense, and are thus instrumentalities of a violation of Title 18 U.S.C. Section 875(c).

**FURTHER AFFIANT SAYETH NOT.**

                                              ROBERT K. SPROULL, JR.
                                              Special Agent
                                              Federal Bureau of Investigation

Sworn to before me and subscribed in my presence
this _____ day of November 2005.

_____
                                              United States Magistrate Judge

**Attachment A**
**Description of Search Location**

<u>**xxxx xxxx STREET, Apartment xxx, N.W., WASHINGTON, D.C. 20005**</u>

The premises are located at xxxx xx$^{xx}$ Street, N.W., Apartment xxx. The premises are described as a tan, ten story, brick multi-unit building with the letters "1150 Horizon House" affixed over the front entrance. Apartment xxx is located on the fourth floor. The door to the apartment is blue in color. The numbers xxx are affixed to the door.

## Attachment B
## ITEMS TO BE SEIZED

All evidence, fruits and instrumentalities of activity of interstate communications of a threat, in violation of Title 18 U.S.C. Section 875(c) including:

**A. RECORDS**

1. Notes, logs, messages, bills, emails, data and other records relating to the e-mail threat to Assistant Director Candice Wills and her family.

**B. HARDWARE**

Computer hardware consisting of computers, and all equipment connected to or networked with the computers located at xxxx xx$^{xx}$ Street, N.W. Apartment xxx, Washington, D.C. which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes but is not limited to any data-processing devices (such as central processing units, memory typewriters, personal digital assistants (PDAs) and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, removable magnetic disk storage drives and disks, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, network transceivers, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks)**.**

**C. SOFTWARE**

Computer software consisting of digital information which can be interpreted by a computer and any of its related components to direct the way they work; in whatever form it may be found, to include: electronic, magnetic, optical, or other digital form, in addition to printed source code. Software includes, but is not limited to: any programs to run operating systems, control peripheral equipment, applications, utilities, scripts, compilers, interpreters, and communications programs; any programs, whether functional or not, to assist in the defeat of security/protective feature in place to prevent the unauthorized copying, distribution, and/or activation of software; along with any and all programs necessary for the proper functioning of this software.

**D. Documentation**

Computer-related documentation consisting of written, recorded, printed, or electronically-stored material which explains or illustrates how to configure or use the computer hardware, software, or other related items. Personal address books or notes containing e-mail addresses, addresses, or other information pertaining to this crime.

**E.  PASSWORDS AND DATA SECURITY DEVICES**

Computer passwords and other data security devices that are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a digital key which "unlocks" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined, security-related functions when activated. Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data.

**F.  Records and Documents**

      Records, documents, journals, instructions, photographs and other material related to the interstate communication of the aforementioned threat.